# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAPHAEL GRAHAM,<br><br>        Plaintiff,<br><br>   v.<br><br>WRIGHT,<br><br>        Defendant. | Case No.: 1:22-cv-00504-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS<br><br>(ECF No. 11)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Raphael Graham ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. The Court screened Plaintiff's complaint, and he was granted leave to amend. (ECF No. 10.) Plaintiff's first amended complaint, filed on July 25, 2022, is currently before the Court for screening. (ECF No. 11.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  I*qbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at Corcoran State Prison where the events in the complaint are alleged to have occurred.  Plaintiff names as the sole defendant M. Wright, Correctional Officer.  Plaintiff alleges violation of a Fourth Amendment invasion of privacy and First Amendment right against retaliation.

On 9/6/21, while Plaintiff was assigned to cell 242-3C03, floor officer M. Wright stated: "routine inspection" and searched Plaintiff's assigned cell.  He was not authorized to strip search (inspect body cavities), but he did so. Plaintiff warned Defendant that "we only strip search during a 'special inspection,'" pursuant to CCR 3287(a)(3) and (b)(5), not during routine inspections.  Defendant Wright said, "on my watch you do."  Plaintiff was upset because he had to show his genitals and anal cavities without a medical setting under direct supervision of a physician and called Defendant Wright a fag.  Plaintiff said he would 602 Defendant Wright.  Defendant Wright said we'd see who is a fag and said 602 me.  Plaintiff believes that during the first search, Defendant's body camera was off.

Plaintiff alleges that according to CCR 3287, a routine inspection is completely different

from an inspection of body cavities which Plaintiff contends was unconstitutional. Plaintiff alleges that the body cavity strip search was done in an unconstitutional manner to invade his privacy, violating his Fourth Amendment rights. The cell door was wide open which allowed other inmates to view the strip search. Defendant said we don't like 602s around here and the institution has the authority to get rid of production of the body cavity cameras video by destroying it.

Five days later on 9/13/21, Defendant Wright took actions to silence Plaintiff from 602ing him and came back to the building as the floor officer. He immediately abused the strip search procedure for a second time as a "ruse to retaliate, harass, shame, humiliate, degrade and punish Plaintiff" as motivated by an invasion of privacy. The second strip search was not done for a valid penological purpose and was done while there were on lookers in the day room and done willfully to have Defendant Wright's body worn camera activated. Plaintiff alleges that Plaintiff informed Wright of the "red light" being activated on the body worn camera, meaning that the camera was still activated. Defendant Wright disregarded Plaintiff and stated for Plaintiff to strip naked, and smiled. Plaintiff alleges that Defendant Wright was trained to deactivate his body worn camera during unclothed strip searches and to place all inmates in the shower during unclothed strip searches. By not deactivating the camera and strip searching Plaintiff where his body cavities could be seen by others was retaliatory and not reasonable exercise of prison policies or serve a legitimate correctional goal. Defendant Wright did not shield Plaintiff's unclothed body cavities from inmates view. He opened Plaintiff's cell wide to search Plaintiff while on lookers looked at Plaintiff as he spread his annual cavity. Defendant could have put Plaintiff in the showers. The search was done in a manner to deprive Plaintiff of his privacy by recording Plaintiff's body cavities. The action was to silence Plaintiff from 602ing Defendant's unreasonable body cavity searches. Wright refused to deactivate his body camera on 9/13/21 in spite of being informed by Plaintiff. His conduct was retaliatory and not a reasonable exercise of prison policies. The result was showing Plaintiff's genitals on film and the video footage was viewed by many institutions.

Plaintiff seeks declaratory relief that the Defendant's actions complained of violate

3

Plaintiff's rights under the Constitution.  Plaintiff also compensatory and punitive damages

## III. Discussion

### A. Retaliation

It is well-established that prisoners have a First Amendment right to file prison grievances and that retaliation against prisoners for their exercise of this right is a constitutional violation. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted). To prevail on a retaliation claim, a plaintiff may "assert an injury no more tangible than a chilling effect on First Amendment rights." *Brodheim*, 584 F.3d at 1269–70. Furthermore, "a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.' " *Id.* at 1271 (citing Rhodes, 408 F.3d at 568–69).

Nevertheless, First Amendment retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, the plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the "logical fallacy of post hoc, ergo propter hoc, literally, "after this, therefore because of this." "). The plaintiff must allege specific facts demonstrating that the plaintiff's protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct." Brodheim, 584 F.3d at 1271 (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). A plaintiff may demonstrate retaliatory intent by alleging a chronology of events from which retaliation can be inferred. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

Liberally construing the allegations in the first amended complaint, Plaintiff states a claim for retaliation against Defendant Wright for the second strip search on 9/13/21.

///

4

### B. Fourth Amendment – Strip Search

The Fourth Amendment prohibits only unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Byrd v. Maricopa County Sheriff's Office,* 629 F.3d 1135, 1140 (9th Cir. 2011); *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988). The reasonableness of the search is determined by the context, which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. Factors that must be evaluated are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*.; *Bull v. City and Cnty. of San Francisco*, 595 F.3d 964, 972 (9th Cir. 2010) (en banc). Routine visual strip searches do not violate the Fourth Amendment. *See Hudson*, 468 U.S. at 529 ("[W]holly random searches are essential to the effective security of penal institutions."); *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 327–28 (2012) ("[D]eterring the possession of contraband depends in part on the ability to conduct searches without predictable exceptions.")

To the extent Plaintiff alleges that Defendant was "not authorized" to conduct an unclothed search of his body, Plaintiff fails to state a cognizable. Routine strip searches have been held constitutional. *See generally Michenfelder v. Sumner*, 860 F.2d at 333.

Plaintiff fails to state a claim for violation of the Fourth Amendment for the first strip search. Plaintiff claims it was conducted in his cell with the cell door open. Plaintiff alleges it was not done under medical supervision. However, the Fourth Amendment permits correctional officers conduct strip searches without medical personnel present. Plaintiff also claims it was done in his cell with the door open for others to see. However, strip searches within the confines of the prisoner's cell have been held constitutional. *Michenfelder v. Sumner,* 860 F.2d 328 (9th Cir. 1988) (rejecting argument that strip searches should be conducted within the cell because searches outside the prisoners' cells are reasonably required to protect the safety of the officers conducting them.). Moreover, the Fourth Amendment does not require the door to remain closed, as closing the officer within the cell with the inmate involves an issue of officer safety. A prisoner need not be strip searched in the most private location available if that venue would jeopardize the officer's safety. *Thompson v. Souza*, 111 F.3d 694, 701 (9th Cir. 1997) (rejecting claim that

strip searches must be conducted out of view of other prisoners and reaffirming that court would not question prison officials' judgment that conditions might require searches outside cells in order to protect the safety of the officers conducting them); *Grummett v. Rushen*, 779 F.2d 491, 494-95 (9th Cir.1985) (rejecting prisoners' Fourth and Fourteenth Amendment claims against female guards who were assigned to positions that required infrequent and casual observation or observation at a distance of sometimes disrobed prisoners.)

Plaintiff alleges that the second strip search was done in a manner to invade his privacy by recording the search on Defendant's body worn camera. The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails. *Bull*, 595 F.3d at 974–75. "[I]ncarcerated prisoners retain a limited right to bodily privacy." *Michenfelder*, 860 F.2d at 333. The Ninth Circuit has long recognized that "[t]he desire to shield one's unclothed figure from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963). "The [Supreme] Court [has] obviously recognized that not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." *Michenfelder*, 860 F.2d at 332.

As to the second strip search, liberally construing the allegations in the complaint, Plaintiff states a Fourth Amendment violation for conducting the second strip searches with an activated body camera, exposing Plaintiff's genitals on camera.[1]

### D.  Verbal Harassment

Allegations of name-calling, verbal abuse, or threats generally fail to state a constitutional claim. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); *see also Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (holding that a prisoner's allegations of threats allegedly made by guards failed to state a cause of action).

---

[1] This screening order recognizes a cognizable claim only for the strip search in which the body camera was activated. Where the strip search was conducted without the body camera being activated, the Court does not find a cognizable claim.

6

### E. Title 15 and Policy Violation

To the extent that Defendant has not complied with applicable state statutes or prison regulations for the searches, these deprivations do not support a claim under § 1983. Section 1983 only provides a cause of action for the deprivation of federally protected rights. *See*, *e.g., Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead,* 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11–12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations).

### F. Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### III. Conclusion and Order

Based on the above, the Court finds that Plaintiff's first amended complaint states a

cognizable claim against Defendant M. Wright for violation of the Fourth Amendment for conducting the second strip search on September 13, 2021, with an activated body worn camera, exposing Plaintiff's genitals on camera and for retaliation in violation of the First Amendment. However, Plaintiff's complaint fails to state any other cognizable claims for relief. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action.

Furthermore, IT IS HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint, filed July 25, 2022 (ECF No. 11) against Defendant M. Wright for violation of the Fourth Amendment for conducting the second strip search with an activated body camera, exposing Plaintiff's genitals on camera and for retaliation in violation of the First Amendment; and
2. All other claims be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 1, 2022**          /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE